# Exhibit: "1"

1  Sa'id Vakili, Esq. (SBN: 176322)
2  *vakili@vakili.com*
   Robert S. Brown, Esq. (SBN: 187845)
3  *rstanfordbrown@gmail.com*
4  **VAKILI & LEUS, LLP**
   3701 Wilshire Boulevard, Suite 1135
5  Los Angeles, California  90010-2822

6  **213/380-6010**  |  Fax: 213/380-6051

7  *Counsel for Plaintiffs Nada Osama Nafaa, Fathieh Jawdat Naji, and J.H.*

8                    **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

10

| | |
|---|---|
| 11  **NADA OSAMA NAFAA, individually** | **CASE NO.: 5:25-cv-00889-KK (DTBx)** |
| 12  **and as Successor-in-Interest to MOHD** | |
| **F. HIJAZ, Deceased; FATHIEH** | **PLAINTIFFS' FIRST AMENDED** |
| 13  **JAWDAT NAJI, an individual; and** | **COMPLAINT FOR DAMAGES** |
| **J.H., a minor child of NADA OSAMA** | |
| 14  **NAFAA and MOHD F. HIJAZ,** | 1. **Fourth Amendment – Excessive Force** |
| 15                    **Plaintiffs,** | **(42 U.S.C. § 1983);** |

16                              v.

17  **COUNTY OF SAN BERNARDINO, a**
18  **California county; and DOES 1-10,**
    **Inclusive,**
19

20                    **Defendants.**

Case details:

**CASE NO.: 5:25-cv-00889-KK (DTBx)**

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DAMAGES**

1. **Fourth Amendment – Excessive Force (42 U.S.C. § 1983);**
2. **Fourteenth Amendment – Substantive Due Process (42 U.S.C. § 1983);**
3. **Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983);**
4. **Municipal Liability – Ratification (42 U.S.C. § 1983);**
5. **Municipal Liability – Failure to Train (42 U.S.C. § 1983);**
6. **Violation of Civil Rights (Cal. *Civil Code* § 52.1);**
7. **Negligence – Wrongful Death & Survival (Cal. *Code of Civil Procedure* §§ 377.60 and 377.61); and**
8. **Battery – Wrongful Death & Survival (Cal. *Code of Civil Procedure* §§ 377.60 and 377.61)**

**DEMAND FOR JURY TRIAL**

*[Margin annotations: Formatted: Line spacing: 1.5 lines; Deleted: ¶; Deleted: ¶; Deleted: FOR THE; Deleted: ¶; Deleted: 889; Deleted: FOR:; Deleted: CITY OF RANCHO CUCAMONGA, a municipal corporation; …; Deleted: 50; Formatted: Font: 12 pt]*

Plaintiffs Nada Osama Nafaa, Fathieh Jawdat Naji, and J.H. (a minor, represented by her Guardian *Ad Litem*, Nada Osama Nafaa) (collectively, "Plaintiffs") allege against Defendants COUNTY OF SAN BERNARDINO, and DOES 1-10, Inclusive (collectively, "Defendants") as follows:

## GENERAL ALLEGATIONS

Some or all of the allegations contained in the following numbered paragraphs are alleged on information and belief of Plaintiffs.

## JURISDICTION AND VENUE

1.    Plaintiffs bring this action pursuant to 42 U.S.C. § 1983.  Federal jurisdiction exists under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(a)(3) and (4) (civil rights).

2.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) because the events, acts, or omissions giving rise to the claims occurred in the County of San Bernardino in the Central District of California.

## PARTIES

3.    Before his death, Mohd F. Hijaz ("Mr. Hijaz" or the "Decedent") resided in the City of Rancho Cucamonga (the "City"), San Bernardino County, California.

4.    Plaintiff Fathieh Jawdat Naji ("Naji") is the mother of the Decedent.  Naji is competent to sue and brings this action both as an individual and as a successor-in-interest to the Decedent.

5.    Plaintiff Nada Osama Nafaa ("Nada") is the widow of the Decedent.  Nada is competent to sue, bringing this action both as an individual and as a successor-in-interest to the Decedent.  Additionally, Nada petitioned the Court to appoint her as the guardian *ad litem* of J.H. (Nada's minor biological daughter with Mr. Hijaz).  On July 1, 2025, the Court appointed Nada as guardian *ad litem* for J.H.; therefore, Nada also brings this action on J.H.'s behalf as her guardian *ad litem*.

1

FIRST AMENDED COMPLAINT

6.      Plaintiff J.H. is the minor daughter of the Decedent. The Decedent is J.H.'s biological father, and Nada is her biological mother.  Currently a toddler, J.H. was at least 50% financially dependent on Mr. Hijaz and lived with her parents, Mr. Hijaz and Nada, for no less than 180 days prior to Mr. Hijaz's death.

7.      Decedent's causes of action are brought through Nada, widow of the Decedent, as his successor-in-interest pursuant to California *Code of Civil Procedure* ("CCP") § 377.30.  Nada has concurrently filed the declaration required by CCP § 377.32.

8.      Defendant County of San Bernardino (the "COUNTY") is located in the Inland Empire region of California, which includes the San Bernardino County Sheriff's Department among its various departments.

9.      The San Bernardino County Sheriff's Department (the "SBSD") is a county-level government agency and a law enforcement entity responsible for maintaining law and order and fulfilling various duties within the COUNTY.

10.     At all times relevant to this Complaint, the COUNTY was responsible for ensuring that its actions, omissions, policies, procedures, practices, and customs, as well as those of its employees and agents, complied with both federal and California state laws.  COUNTY was the employer of DOES 1-10, inclusive.

11.     Defendant DOES 1-8, inclusive, are deputies employed by SBSD.  DOES 1-8 were acting under color of state law, within the course and scope of their employment with the COUNTY, and with the actual or ostensible authority and ratification of COUNTY.  Plaintiffs are informed and believes that DOES 1-8, inclusive, are the deputy who tased and beat Decedent with batons, causing his death.

12.     Defendants DOES 9-10, inclusive, are supervisory, managerial, policymaking, or final policymaking officials employed by COUNTY and/or SBSD.  DOES 9-10, inclusive, were acting under color of law, within the course and scope of their duties, and with the authority and ratification of COUNTY.

13.     Plaintiffs are currently unaware of the true names and capacities of

2

FIRST AMENDED COMPLAINT

Defendants sued herein as DOES 1–10, inclusive, and therefore sue these DOE Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis allege, that each DOE Defendant is responsible in some manner for the conduct and injuries alleged in this Complaint.

14. Plaintiffs are informed and believe, and on that basis allege, that each Defendant, including DOES 1–10, inclusive, acted as an agent, employee, co-conspirator, and/or joint actor with each of the other Defendants, and in doing the acts alleged herein, acted within the scope of such relationships and with the knowledge, consent, and approval of the other Defendants.

15. Pursuant to California *Government Code* § 815.2, Defendant COUNTY is vicariously liable for the acts and omissions of DOES 1–10, inclusive, to the extent those acts and omissions occurred within the scope of their employment. Defendant COUNTY is also liable under California *Government Code* § 815.6 for its failure to discharge a mandatory duty. Defendants DOES 1–10, inclusive, are liable under California *Civil Code* § 820(a).

16. All natural person Defendants, including DOES 1–10, inclusive, are sued in their individual capacities. Defendant COUNTY is sued for its direct liability under *Monell v. Department of Social Services* (1978) 436 U.S. 658 and for vicarious liability under California state law. Plaintiffs seek punitive damages only against the individual defendants.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

17. Shortly after midnight, in the early hours of Tuesday, March 19, 2024, deputies were summoned to the 10100 block of Foothill Boulevard at the Arte Apartments complex, just east of the boulevard's intersection with Hermosa Avenue in Rancho Cucamonga. At least one unidentified individual who contacted the police

3.
FIRST AMENDED COMPLAINT

---

Deleted: -50

Deleted: . Therefore, Plaintiffs

Deleted: defendants under the

Deleted: designations of DOES 1-50, inclusive,

Deleted: of the

Deleted: defendants

Deleted: alleged in this complaint

Deleted: acted under the color of state law. All Defendants' actions alleged in this Complaint were carried out

Deleted: course, purpose, and

Deleted: agency, service, and

Deleted: , and

Deleted: the color of

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

reported that another person was in distress and behaving erratically.

18.    Mr. Hijaz was outside in the parking lot, seated near a bush or curb.  At some point before the deputies were called and arrived, he had a brief exchange with at least one passing driver who noticed he was in distress.  Mr. Hijaz was sitting on the ground in plain view by some low shrubbery in the outdoor parking lot of the Arte Apartments. During that brief interaction, he could barely verbalize that he needed water, and the driver replied, "I'm going to get you some water, hold on," or something similar, as the driver drove past him.

19.    The County's SBSD deputies responded within minutes of the call, and two female officers encountered the distressed 32-year-old Mr. Hijaz.

20.    Mr. Hijaz was seated when the two female SBSD deputies arrived.  As the deputies parked and approached him, Mr. Hijaz stood up and began walking toward them, likely seeking water or assistance since he was visibly in distress and not feeling well.

21.    The SBSD deputies deployed their tasers on Mr. Hijaz multiple times.  At one point during the encounter, another patrol car, presumably from the County's SBSD, arrived, bringing two large male deputies to assist the two female deputies.

22.    In the course of their encounter with Mr. Hijaz, the SBSD deputies employed unreasonable and disproportionate force.  Mr. Hijaz was tased multiple times and violently hit with a barrage of baton strikes.  At some point in time during the encounter, Mr. Hijaz's head was violently slammed into the pavement while he was continuously struck with batons.

23.    As a result of the physical assault on Mr. Hijaz by the SBSD deputies, he sustained severe injuries and experienced cardiopulmonary arrest.  Mr. Hijaz was held until personnel from the Rancho Cucamonga Fire and American Medical Response arrived to transport him to San Antonio Regional Hospital in Upland, California.

24.    Shortly after Mr. Hijaz was transported to San Antonio Regional Hospital in the early morning hours of March 19, 2024, he was pronounced dead.

4.
FIRST AMENDED COMPLAINT

**Deleted:** their patrol cars

**Deleted:** a third

**Deleted:** ¶

**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt

25.    On September 6, 2024, claim forms were submitted against the County on behalf of all three Plaintiffs.  Around October 10, 2024, the County rejected the claims of all three Plaintiffs and mailed letters informing them of the rejections.

## FIRST CAUSE OF ACTION

**Fourth Amendment – Excessive Force (42 U.S.C. § 1983)**

**(By *Plaintiff Nada, Successor-in-Interest to Decedent,* against *DOES 1-8, inclusive*)**

26.    Plaintiff incorporates by reference the allegations set forth above.

27.    Plaintiff Nada brings this cause of action as Decedent's successor-in-interest pursuant to CCP § 377.30 against Defendants.  Plaintiffs bring this cause of action in their individual capacity pursuant to CCP § 377.60, which is incorporated by 42 U.S.C. § 1988.

28.    The Decedent had the Fourth Amendment right to be free from excessive force, which encompasses the right to be free from any use of force when none was necessary, to remain free from force while surrendering, and to be free from force while complying with the officers' orders and commands.  The Decedent posed no threat and was not attempting to flee.  He was experiencing a mental health crisis, was visibly in distress, and was not engaging in criminal conduct.  There was no need to exercise any force, let alone the excessive force that ultimately caused the Decedent's death.

29.    The force exerted by the SBSD deputies against the Decedent was excessive and unjustified.  Repeatedly tasing the Decedent, slamming his head violently into the pavement, beating him with their batons, beating him with fists, and/or kicking him were all unnecessary and excessive uses of force.

30.    As a proximate result of the foregoing unnecessary and excessive use of force mentioned above, the Decedent experienced pain and suffering before death, ultimately leading to his death.  The Decedent is entitled to compensation for this pain and suffering, as well as for the loss of his life.  Thus, Plaintiff is seeking survival damages, including but not limited to pre-death pain and suffering, loss of life, and loss

5.

FIRST AMENDED COMPLAINT

of enjoyment of life.

31.    The Defendants' conduct justifies the imposition of punitive damages against the individual defendants, *i.e.*, DOES 1-8, inclusive, to punish them and deter them from engaging in similar conduct in the future because their conduct was malicious, oppressive, and in reckless disregard of Decedent's rights.

32.    Plaintiff seeks attorney fees and costs under this claim.

## SECOND CAUSE OF ACTION

**Fourteenth Amendment – Substantive Due Process (42 U.S.C. § 1983)**

**(By *Individual* Plaintiffs against *DOES 1-8, inclusive*)**

33.    Plaintiffs incorporate by reference the allegations set forth above.

34.    Plaintiffs bring this cause of action in their respective individual capacities. They have cognizable interests under the Fourteenth Amendment of the United States Constitution to be free from state action that resulted in the Decedent's death and severed their familial relationship with the Decedent.

35.    The actions of the Defendants, as alleged above, including those of DOES 1-8, inclusive, shock the conscience.  All Defendants, including DOES 1-8, inclusive, acted with reckless and deliberate indifference to the constitutional rights of the Decedent and the Plaintiffs, intending to harm the Decedent, unrelated to any legitimate or reasonable law enforcement objective.

36.    As a result of the conduct of all Defendants, including DOES 1-8, inclusive, they are liable to Plaintiffs for Decedent's injuries and death, either because they were integral participants in the excessive force or because they failed to intervene to prevent the violation(s).

37.    The conduct alleged above by Defendants and DOES 1-8, inclusive, constituted both a cause-in-fact and a proximate cause of the Decedent's deprivation of civil rights protected under the United States Constitution, as well as of his death.  This

6
FIRST AMENDED COMPLAINT

---

**Deleted:** The conduct alleged above by the Defendants was both a cause-in-fact and a proximate cause of the Decedent's deprivation of civil rights protected under the United States Constitution, ultimately resulting in his death. This grants the Plaintiffs, and each of them, the right to claim for the loss of the Decedent's love, society, companionship, support, and economic damages, which include medical, funeral, and burial expenses.

**Moved down [1]:** ¶
The Defendants' conduct justifies the imposition of punitive damages against the individual defendants, *i.e.*,

**Deleted:** DOES 1-50

**Deleted:** *All Defendants &*

**Deleted:** *50, Inclusive*

**Deleted:** Decedent's

**Deleted:** 50

**Deleted:** 50

**Deleted:** 50

**Deleted:** 50

**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt

entitles Plaintiffs, and each of them, to damages for the loss of Decedent's love, society, companionship, support, and economic damages.

38.    By reason of the stated acts and omissions of Defendants, Plaintiffs have been deprived of the life-long love, companionship, affection, guidance, comfort, support, society, care, and past and future support of Decedent, and will continue to be so deprived for the remainder of their natural lives.

39.    By reason of the stated acts and omissions of Defendants, Plaintiffs were caused to incur funeral costs and related burial expenses, the loss of gifts and benefits, and the loss of financial support.

40.    The Defendants' conduct justifies the imposition of punitive damages against the individual defendants, *i.e.*, DOES 1-8, inclusive, to punish them and deter them from engaging in similar conduct in the future because their conduct was malicious, oppressive, and in reckless disregard of Decedent's rights.

41.    Plaintiffs bring this claim individually and seek compensatory damages under this claim.  Plaintiffs also seek attorney fees and costs under this claim.

### THIRD CAUSE OF ACTION

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

**(By Plaintiffs against *Defendant County of San Bernardino and* DOES *9-10, inclusive*)**

42.    Plaintiffs incorporate by reference the allegations set forth above.

43.    On and before March 19, 2024, Defendants and DOES 1-8, inclusive, deprived Plaintiffs of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, of Plaintiffs, and of persons in their class, situation, and comparable

7

FIRST AMENDED COMPLAINT

position in particular, knowingly maintained, enforced, and applied an official policy recognized by the COUNTY.

44.    When DOES 1-8, inclusive, used deadly force against Decedent and then denied him prompt and necessary medical care, DOES 1-8, inclusive, acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

45.    On information and belief, DOES 1-8, inclusive, were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Decedent's death.

46.    DOES 1-8, inclusive, acted under color of law.

47.    DOES 1-8, inclusive, acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendants.

48.    On information and/or belief, DOES 1-8, inclusive, were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Decedent's death.

49.    Defendant COUNTY together with other COUNTY policymakers and supervisors maintained the following unconstitutional customs, practices, and policies:

   a.    Using excessive force, including excessive deadly force;

   b.    Providing inadequate training regarding the use of deadly force;

   c.    Employing and retaining as deputies, individuals like DOES 1-8, inclusive, whom Defendant COUNTY and DOES 9-10, inclusive, knew or reasonably should have known had dangerous propensities for abusing their authority and for using excessive force;

   d.    Inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies and other personnel, including DOES 1-10, inclusive, whom Defendant COUNTY knew, or in the exercise of reasonable care, should have known had dangerous propensities and

8

FIRST AMENDED COMPLAINT

character traits;

e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling the misconduct by COUNTY deputies.

f. Failing to adequately discipline COUNTY deputies, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g. Announcing that unjustified uses of force are "within policy" including deadly uses of force that were later determined in court to be unconstitutional;

h. Even where deadly uses of force are determined in court to be unconstitutional, refusing to discipline terminate, or retrain the deputies involved;

i. Encouraging, accommodating, or facilitating a "code of silence" in which deputies do not report other deputies' errors, misconduct or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another deputy, while following the code, the deputy being questioned will claim ignorance of the other deputies' wrongdoing;

j. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement deadly uses of force, including by failing to discipline, retrain, investigate, terminate, and recommend deputies for criminal prosecution who participate in the killing of unarmed people;

k. Having and maintaining an unconstitutional custom and practice of

9.
FIRST AMENDED COMPLAINT

using excessive force and covering up police misconduct. These customs and practices of the COUNTY were condoned in deliberate indifference to the safety and rights of its civilians, including those of the Plaintiffs and the Decedent.

l.    Failing to properly investigate claims of excessive force by COUNTY deputies.

50.    By reason of the foregoing policies and practices of Defendants, individually and as peace officers, Decedent sustained severe, life-threatening injuries, was inflicted with pain and suffering, and ultimately, lost his life and earning capacity when DOES 1-10, inclusive, disregarding their training, ignored protocols for contacting persons with mental disabilities and/or persons in the midst of a mental health crisis, and tased Decedent and struck him multiple times with batons, causing his death.

51.    By reason of the foregoing acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Decedent.  The stated acts and omissions also caused Decedent's pain and suffering, loss of enjoyment of life, and death.

52.    Defendants COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the different policies, practices, and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these Defendants condoned, tolerated and, through actions and omissions, ratified such policies.  Said Defendants also acted with deliberate indifference to both the foreseeable effects and consequences of these policies with respect to the constitutional rights of Decedent, Plaintiffs and other individuals similarly situated.

53.    By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY and DOES 9-10, inclusive, acted with intentional, reckless, and callous disregard for the life of Decedent and for Decedent's and Plaintiffs' constitutional rights.  Moreover, the policies, practices, and

10

FIRST AMENDED COMPLAINT

customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 9-10, inclusive, were affirmatively linked to and were a significant influential force behind the injuries of Decedent and Plaintiff.

54.    The following are a few examples of continued conduct by deputies employed with COUNTY, which indicate COUNTY's failure to properly train its deputies and a longstanding practice or custom of constitutional rights abuses through the use deadly force, including victims who were either mentally disabled or in the midst of a mental health crisis:

a.    In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable.    The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b.    In *Archibald v. County of San Bernardino*, Case No. 5:2016-cv-01128, a jury found that in November 2015, a San Bernardino County Sheriff's deputy used excessive deadly force against a man displaying symptoms of mental illness and awarded the Plaintiffs $33,000,000 in damages.    On information and belief, the COUNTY did not discipline the deputy who subsequently used excessive deadly force again when he shot a man who was pulled over for a traffic infraction.    The fact that this deputy has engaged in two unjustified shootings and remains employed by the San Bernardino County Sheriff's Department confirms that the COUNTY has adopted an official policy and/or widespread practice, custom, or informal policy, of condoning the use of excessive force by deputies.

c.   In *Young v. County of San Bernardino, et al.*, case number 5:15- CV-01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable.  In 2016, a jury agreed and awarded a high six-figure verdict in plaintiff's favor.

d.   In *V.R. et al. v. County of San Bernardino*, Case No. 5: 2016-cv-01128, San Bernardino County Sheriff's deputies used excessive force in fatally shooting a mentally disabled man in July 2018.  Plaintiffs are informed and believe that the San Bernardino County Sheriff's Department has not disciplined the deputies, but to the contrary has found that their tactics were within San Bernardino County Sheriff's Department policy.

e.   In *Trent v. County of San Bernardino*, Case No. 5:2012-cv-02221, a San Bernardino County Sheriff's deputy used excessive force when he shot Ms. Trent in June 2012, resulting in a substantial settlement. Plaintiffs are informed and believe that the deputy was not disciplined and that his use of force was found to be within San Bernardino County Sheriff's Department policy.

f.   In *T.M. (Phillips) v. County of San Bernardino*, Case No. 5:18-cv-2532, an SBSD deputy shot a 5-foot-tall mother of three in the back of the head in connection with a misdemeanor warrant in October 2018. Plaintiffs are informed and believe that although the County paid a substantial settlement, the deputy was not disciplined, and the shooting was found to have been within San Bernardino County Sheriff's Department policy.

g.   In *M.A., et al. v. County of San Bernardino*, Case No. 20-cv-00567, San Bernardino County Sheriff's deputies used excessive force when they shot and killed a man without justification in July 2019.  Plaintiffs

12

FIRST AMENDED COMPLAINT

1    are informed and believe that the deputies involved have not been

2    disciplined and that the shooting was found to be within San

3    Bernardino County Sheriff's Department policy.

4    h.    In *Gomez v. Peppler*, Case No. 13-cv-02185, the COUNTY paid

5    $5,000,000 to settle a case in which a San Bernardino County Sheriff's

6    Department deputy shot an unarmed man in August 2011.  Plaintiffs

7    are informed and believe that the deputies involved in the incident

8    were not disciplined and that the shooting was found to be within San

9    Bernardino County Sheriff's Department policy.

10   i.    On September 18, 2015, a San Bernardino Sheriff's deputy shot and

11   killed Nicholas Johnson during a pursuit.  At the time of the shooting,

12   Johnson was not posing an imminent risk of harm to anyone as he was

13   driving straight in the emergency lane.  In 2016, San Bernardino

14   County Sheriff McMahon presented the involved deputies the

15   Sheriff's Medal of Valor for the use of excessive force.  Upon

16   information and belief, there is a repeated pattern of failing to

17   discipline deputies who engage in excessive force.

18   j.    In April 2015, San Bernardino Sheriff's deputies beat and tased

19   Francis Jared Pusok after he fled police on a stolen horse.  When Pusok

20   fell off the horse, deputies pinned him to the ground, tased and beat

21   him.  Seven of the 10 deputies involved were placed on administrative

22   leave and resumed their duties in January 2016.

23   k.    Clearly, the San Bernardino Sheriff's Department unfortunately has

24   demonstrated a pattern and practice of excessive force and deadly

25   force against persons who are in the midst of a mental health crisis.

26   l.    In *Gainer, et al. v. County of San Bernardino, et. al.,* Case No.5:25-

27   cv-01438, on March 9, 2024, a San Bernardino Sheriff's Department

13

FIRST AMENDED COMPLAINT

deputy shot and killed 15-year-old, Ryan Gainer, who was autistic, after his family had called for assistance due to him being disruptive. Despite knowledge of him being autistic, Ryan Gainer was fatally shot by San Bernardino Sheriff's Department after deputies arrived.

m.  In *Garza, et al. v. County of San Bernardino, et al.*, Case No. 5:23-cv-01849, on February 5, 2023, San Bernardino County Sheriff's deputies shot and killed Tony Garza while he was suffering from a mental health crisis that was known to the SBSD and the COUNTY. On information and belief, in 2022, Mr. Garza was determined not mentally competent to stand trial and promised mental health treatment. Notwithstanding this determination, on information and belief, SBSD and the COUNTY failed to place Mr. Garza on the waitlist for mental health treatment.  Shortly after SBSD and the COUNTY released Mr. Garza without providing treatment, Mr. Garza, who did not pose a threat to responding officers or others, was chased down and fatally shot by SBSD deputies.

n.  In *James, et. al. v. County of San Bernardino, et. al.*, Case No. 5:25-cv-00140, on or about April 2, 2024, San Bernardino County Sheriff's deputies tackled and fatally shot a teenager, Aaron James, as he was suffering a mental health crisis.

o.  On or around April 5, 2024, at a press conference about the fatal shooting of Aaron James, defendant San Bernardino County Sheriff Shannon Dicus, while acting under the color of state law, stated: *"Obviously, we've had a number of these situations occur here, and it would certainly be my plea to the media that's present here, the media that's going to cover this story, [that] somehow—when we had the Ryan Gainer case, this turned into a racial issue.  The overriding issue*

14
FIRST AMENDED COMPLAINT

*here that we need to be paying attention to as a society … is that we have a mental health crisis on our hands[.]"*  Thus, Defendants had actual and/or constructive knowledge that SBSD's practice of acting with deliberate indifference to the constitutional rights of citizens and/or engaging force to respond to persons experiencing mental health issues was uniquely widespread.

p.    In *Vargas, et al. v. County of San Bernardino*, Case No. 5:25-cv-01893, on December 16, 2024, a San Bernardino County Sheriff's Department deputy shot and killed Jefte Vargas Ramirez.  On information and belief, Ramirez was unarmed and not suspected of committing any serious or violent crime.

55.    By reason of the foregoing acts and omissions of Defendants COUNTY and DOES 9-10, inclusive, Plaintiffs have been deprived of the life-long love, companionship, affection, guidance, comfort, support, society, care, and past and future support of Decedent, and will continue to be so deprived for the remainder of their natural lives.

56.    By reason of the stated acts and omissions of Defendants, Plaintiffs were caused to incur funeral costs and related burial expenses, the loss of gifts and benefits, and the loss of financial support.

57.    Accordingly, Defendants COUNTY and DOES 9-10, inclusive, are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

58.    All Plaintiffs bring this claim both individually, and Plaintiff Nada also does so as the Successor-in-Interest to Decedent.  Thus, they seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life under this claim.  Plaintiffs also seek attorney fees and costs related to this claim.

Deleted: sustenance

Deleted:

Deleted: ¶

Deleted: plaintiff

Deleted: brings this claim

Deleted: , as well as wrongful death damages

Deleted: attorney's

Formatted: Font: Times, Underline

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

**FOURTH CAUSE OF ACTION**

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

***(By Plaintiffs against County of San Bernardino and DOES 9-10, inclusive)***

59.    Plaintiffs incorporate by reference the allegations set forth above.

60.    DOES 1-8, inclusive, acted under color of law.

61.    The acts and omissions of DOES 1-8, inclusive, deprived Decedent and Plaintiffs of their particular rights under the United States Constitution, including by intentionally and unjustifiably tasing and beating Decedent with batons, resulting in his death, and depriving Plaintiffs of their familial relationship with him.

62.    Upon and information and belief, one or more final policymakers within the San Bernardino Sheriff's Department, DOES 9-10, inclusive, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

63.    Upon information and belief, one or more final policymakers within the San Bernardino Sheriff's Department, DOES 9-10, inclusive, acting under color of law and the authority of the COUNTY, who had final policymaking authority concerning the acts of DOES 1-8, inclusive, ratified the individual defendants' acts and bases for them. Upon information and belief, the final policymaker(s) knew and specifically approved of individual defendants' acts and omissions of DOES 1-8, inclusive. This ratification includes express approval of the unjustified and excessive use of deadly force against Decedent when he did not pose an immediate threat of death or serious bodily injury to anyone.

64.    Upon information and belief, one or more final policymakers within the San Bernardino Sheriff's Department, DOES 9-10, inclusive, has determined (or will determine) that the acts of DOES 1-8, inclusive, were "within policy," thereby ratifying those actions.

65.    The San Bernardino Sheriff's Department official policy prohibits the use of deadly force unless an individual poses an immediate threat of death or serious bodily

16

FIRST AMENDED COMPLAINT

injury to deputies or others.  The conduct of DOES 1-8, inclusive, was contrary to that policy, as Decedent posed no such threat at the time that he was tased and beaten.

66.    Furthermore, the policies, practices, and customs implemented, maintained, and tolerated by Defendants, individually and as peace officers, were affirmatively linked to, and were the significant influential force behind, the injuries inflicted upon and suffered by Decedent and Plaintiffs.

67.    By reason of the stated acts and omissions, Plaintiffs have been deprived of the life-long love, companionship, affection, guidance, comfort, support, society, care, and past and future support of Decedent, and will continue to be so deprived for the remainder of their natural lives.  The stated acts and omissions also caused Decedent's pain and suffering, loss of enjoyment of life, and ultimately, his death.

68.    By reason of the stated acts and omissions of Defendants, Plaintiffs were caused to incur funeral costs and related burial expenses, the loss of gifts and benefits, and the loss of financial support.

69.    Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

70.    All Plaintiffs bring this claim both individually, and plaintiff Nada also brings this claim as the Successor-in-Interest to Decedent.  Thus, they seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress and loss of life and enjoyment of life, and any economic losses of Decedent, under this claim.  Plaintiffs also seek attorney fees and costs under this claim.

**FIFTH CAUSE OF ACTION**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

***(By Plaintiffs against County of San Bernardino and DOES 9-10, inclusive)***

71.    Plaintiffs incorporate by reference the allegations set forth above.

72.    DOES 1-8, inclusive, acted under color of law.

17
FIRST AMENDED COMPLAINT

Deleted: sustenance

Deleted:

Deleted: ¶

Deleted: the City, the County, and DOES 1-50, inclusive, are

Deleted: as well as wrongful death damages

Deleted: attorney's

Deleted: *All Defendants &*

Deleted: *1-50, Inclusive*

Deleted: as though fully set forth, those

Deleted: from paragraphs 1 through 55, inclusive, of this Complaint as though fully stated

Deleted: 50

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

73. The acts of DOES 1-8, inclusive, deprived Decedent and Plaintiffs of their rights under the United States Constitution.

74. On information and belief, Defendant COUNTY failed to properly and adequately train DOES 1-8, inclusive, including but not limited to, about the use of less than lethal force, and deadly force.

75. On information and belief, Defendant COUNTY failed to properly and adequately train DOES 1-8, inclusive, including but not limited to, handling law enforcement situation involving people with mental disabilities or people in the midst of a mental health crisis.

76. The training policies of Defendant COUNTY were not adequate to train its deputies to handle the usual and recurring situations with which they must deal.

77. Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

78. The failure of Defendant COUNTY to provide adequate training caused the deprivation of Plaintiffs' rights by DOES 1-8, inclusive; that is, Defendants' failure to train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injuries.

79. Upon information and belief, DOES 9-10, inclusive, acting under color of law and possessing final policymaking authority with respect to the actions of Defendant COUNTY.

80. The following are a few examples of continued conduct by deputies employed with the COUNTY, which indicate COUNTY'S failure to properly train its deputies, including victims who were either mentally disabled or in the midst of a mental health crisis:

a. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, case number 5:14-cv-01289-DMG-AGR(x), plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was

18

unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b.  In *Archibald v. County of San Bernardino*, Case No. 5:2016-cv-01128, a jury found that in November 2015, a San Bernardino County Sheriff's deputy used excessive deadly force against a man displaying symptoms of mental illness and awarded the plaintiffs $33,000,000 in damages. On information and belief, the COUNTY did not discipline the deputy who subsequently used excessive deadly force again when he shot a man who was pulled over for a traffic infraction. The fact that this deputy has engaged in two unjustified shootings and remains employed by the San Bernardino County Sheriff's Department confirms that the County has adopted an official policy and/or widespread practice, custom, or informal policy, of condoning the use of excessive force by deputies.

c.  In *Young v. County of San Bernardino, et al.*, case number 5:15- CV-01102-JGB-SP, plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016, a jury agreed and awarded a high six-figure verdict in plaintiff's favor.

d.  In *V.R., et al. v. County of San Bernardino*, Case No. 5: 2016-cv-01128, San Bernardino County Sheriff's deputies used excessive force in fatally shooting a mentally disabled man in July 2018. Plaintiffs are informed and believe that the San Bernardino County Sheriff's Department has not disciplined the deputies, but, to the contrary, has found that their tactics were within San Bernardino County Sheriff's Department policy.

19

FIRST AMENDED COMPLAINT

e.   In *Trent v. County of San Bernardino*, Case No. 5:2012-cv-02221, a San Bernardino County Sheriff's deputy used excessive force when he shot Ms. Trent in June 2012, resulting in a substantial settlement. Plaintiffs are informed and believe that the deputy was not disciplined and that his use of force was found to be within San Bernardino County Sheriff's Department policy.

f.   In *T.M. (Phillips) v. County of San Bernardino*, Case No. 5:18-cv-2532, an SBSD deputy shot a 5-foot-tall mother of three in the back of the head in connection with a misdemeanor warrant in October 2018. Plaintiffs are informed and believe that although the County paid a substantial settlement, the deputy was not disciplined, and the shooting was found to have been within San Bernardino County Sheriff's Department policy.

g.   In *M.A., et al. v. County of San Bernardino*, Case No. 20-cv-00567, San Bernardino County Sheriff's deputies used excessive force when they shot and killed a man without justification in July 2019. Plaintiffs are informed and believe that the deputies involved have not been disciplined and that the shooting was found to be within San Bernardino County Sheriff's Department policy.

h.   In *Gomez v. Peppler*, Case No. 13-cv-02185, the COUNTY paid $5,000,000 to settle a case in which a San Bernardino County Sheriff's Department deputy shot an unarmed man in August 2011. Plaintiffs are informed and believe that the deputies involved in the incident were not disciplined and that the shooting was found to be within San Bernardino County Sheriff's Department policy.

i.   On September 18, 2015, a San Bernardino Sheriff's deputy shot and killed Nicholas Johnson during a pursuit. At the time of the shooting,

20

FIRST AMENDED COMPLAINT

Johnson was not posing an imminent risk of harm to anyone as he was driving straight in the emergency lane. In 2016, San Bernardino County Sheriff McMahon presented the involved deputies the Sheriff's Medal of Valor for the use of excessive force. Upon information and belief, there is a repeated pattern of failing to discipline deputies who engage in excessive force.

j. In April 2015, San Bernardino Sheriff's deputies beat and tased Francis Jared Pusok after he fled police on a stolen horse. When Pusok fell off the horse, deputies pinned him to the ground, tased and beat him. Seven of the 10 deputies involved were placed on administrative leave and resumed their duties in January 2016.

k. Clearly, the San Bernardino Sheriff's Department unfortunately has demonstrated a patterns and practice of excessive force and deadly force against persons who are in the midst of a mental health crisis.

l. In *Gainer, et al. v. County of San Bernardino, et. al.,* Case No.5:25-cv-01438, on March 9, 2024, a San Bernardino Sheriff's Department deputy shot and killed 15-year-old, Ryan Gainer, who was autistic, after his family had called for assistance due to him being disruptive. Despite knowledge of him being autistic, Ryan Gainer was fatally shot by San Bernardino Sheriff's Department after deputies arrived.

m. In *Garza, et al. v. County of San Bernardino, et al.,* Case No. 5:23-cv-01849, on February 5, 2023, San Bernardino County Sheriff's deputies shot and killed Tony Garza while he was suffering from a mental health crisis that was known to the SBSD and the COUNTY. On information and belief, in 2022, Mr. Garza was determined not mentally competent to stand trial and promised mental health treatment. Notwithstanding this determination, on information and

21.
FIRST AMENDED COMPLAINT

belief, SBSD and the COUNTY failed to place Mr. Garza on the waitlist for mental health treatment.  Shortly after SBSD and the COUNTY released Mr. Garza without providing treatment, Mr. Garza, who did not pose a threat to responding officers or others, was chased down and fatally shot by SBSD deputies.

n.  In *James, et al. v. County of San Bernardino, et al.,* Case No. 5:25-cv-00140, on or about April 2, 2024, San Bernardino County Sheriff's deputies tackled and fatally shot a teenager, Aaron James, as he was suffering a mental health crisis.

o.  On or around April 5, 2024, at a press conference about the fatal shooting of Aaron James, defendant San Bernardino County Sheriff Shannon Dicus, while acting under the color of state law, stated: *"Obviously, we've had a number of these situations occur here, and it would certainly be my plea to the media that's present here, the media that's going to cover this story, [that] somehow—when we had the Ryan Gainer case, this turned into a racial issue. The overriding issue here that we need to be paying attention to as a society … is that we have a mental health crisis on our hands[.]"*  Thus, Defendants had actual and/or constructive knowledge that SBSD's practice of acting with deliberate indifference to the constitutional rights of citizens and/or engaging force to respond to persons experiencing mental health issues was uniquely widespread.

p.  In *Vargas, et al. v. County of San Bernardino,* Case No. 5:25-cv-01893, on December 16, 2024, a San Bernardino County Sheriff's Department deputy, shot and killed Jefte Vargas Ramirez.  On information and belief, Ramirez was unarmed and not suspected of committing any serious or violent crime.

22
FIRST AMENDED COMPLAINT

81.    By reason of the stated acts and omissions, Plaintiffs have been deprived of the life-long love, companionship, affection, guidance, comfort, support, society, care, and past and future support of Decedent, and will continue to be so deprived for the remainder of their natural lives.  The stated acts and omissions also caused Decedent's pain and suffering, loss of enjoyment of life, and death.

82.    Accordingly, the City, the County, and DOES 1-10, inclusive, are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

83.    All Plaintiffs bring this claim both individually, and plaintiff Nada also brings this claim as the Successor-in-Interest to Decedent.  Thus, they seek survival damages, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress and loss of life and enjoyment of life, and any economic losses of Decedent, under this claim.  Plaintiffs also seek attorney fees and costs under this claim.

### SIXTH CAUSE OF ACTION

**Violation of Civil Rights (California *Civil Code* § 52.1)**

***(By Plaintiff Nada, as Successor-in-Interest to Decedent, against County of San Bernardino and DOES 1-8, inclusive)***

84.    Plaintiffs incorporates by reference the allegations set forth above.

85.    This action is brought pursuant to California *Civil Code* § 52.1.  This cause of action is to redress the deprivation, under color of statute, ordinance, regulation, policy, custom, practice or usage, of rights, privileges, and immunities secured by the California *Civil Code* including, but not limited to, the right to be free from violence, threats of violence and unlawful seizure.

86.    California *Civil Code* § 52.1 (the Bane Act) prohibits any person from using violent acts or threatening to commit violent acts in retaliating against another person for exercising that person's constitutional rights.  Conduct that violates the Fourth

FIRST AMENDED COMPLAINT

Amendment violates the Bane Act.

87.    In physically assaulting, tasing, and killing Decedent, DOES 1-8, inclusive, violated Decedent's right to be free from violence, threats of violence, and unlawful seizure as guaranteed to him by California *Civil Code* § 52.1.

88.    On information and belief, Plaintiffs allege that on or about March 19, 2024, DOES 1-10, inclusive, assaulted, and battered Decedent, as described, all of which constituted excessive, unjustifiable, and unreasonable force in violation of Decedent's civil rights, including his right to be free from violence, threats of violence, and unlawful seizure.

89.    The stated misconduct of DOES 1-8, inclusive, while acting within the course and scope of their duties for the City and the County, constituted interference and attempted interference, by threats, intimidation, and coercion, with Decedent's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California *Civil Code* § 52.1.

90.    The conduct of Defendants and of DOES 1-8, inclusive, was a substantial factor in causing Plaintiff's harms, losses, injuries, and damages.

91.    The COUNTY is vicariously liable for the wrongful acts of DOES 1-8, inclusive, pursuant to California *Government Code* § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

92.    Defendants are vicariously liable under California law and the doctrine of *respondeat superior*.

93.    As a result of the conduct of DOES 1-8, inclusive, Decedent experienced conscious pain and suffering, emotional distress, loss of life and enjoyment of life, and economic losses.

94.    The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Decedent's and Plaintiffs' rights, justifying

Deleted: 50

Deleted: .

Deleted: 50

Deleted: 50

Deleted: .

Deleted: .

Deleted: .

Deleted: 50

Deleted: Plaintiffs'

Deleted: City and/or the County are

Deleted: 50

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

Formatted: Font: 13 pt

an award of exemplary and punitive damages as to the individual defendants, *i.e.*, DOES 1-8, inclusive.

95.   Plaintiffs seek survival damages, attorney fees and costs under California Civil Code § 52.1.

### SEVENTH CAUSE OF ACTION

**Negligence – Wrongful Death and Survival**

**(California *Code of Civil Procedure* §§ 377.60 and 377.61)**

**(*By Plaintiffs against All Defendants*)**

96.   Plaintiffs incorporate by reference the allegations as set forth above.

97.   DOES 1-8, inclusive, were acting within the course and scope of their employment as deputies for the San Bernardino County Sheriff's Department.

98.   Peace officers, including DOES 1-8, inclusive, owe a duty to exercise reasonable care in the performance of their duties, including but not limited to: using appropriate de-escalation tactics; giving clear, non-conflicting commands; using deadly force only when necessary; and providing or summoning timely medical care after causing serious injury.

99.   Plaintiffs are informed and believe, and allege, that Defendants, and each of them, had a duty to exercise reasonable and ordinary care in the operation of their weapons and use of physical force, and in the selection and execution of police procedures related to the arrest or detention of persons who are mentally disabled or not mentally disabled, yet nevertheless failed to exercise reasonable and ordinary care in committing the acts alleged, by actions and inactions which include, but are not limited to, negligently tasing, physically assaulting, and ultimately killing Decedent, negligently failing to determine the fact that Decedent posed no threat of physical harm to any person when he was taken down, negligently inflicting physical injury upon Decedent as described, and negligently employing deadly force against Decedent when it was unnecessary and unlawful.  All of these negligent acts proximately caused Decedent's

25.

FIRST AMENDED COMPLAINT

injuries and death.

100.   Plaintiffs are informed and believe that the subject incident was additionally caused by the negligent deployment of the SBSD deputies and the failure of these supervisors and employees to develop a tactically sound plan for detaining Decedent while responding to the call(s) regarding Decedent, to determine whether Decedent was a danger to anyone present at the location.  Plaintiffs are further informed and believe that, as a result, the negligent actions and negligent decisions of Defendants led to poor decisions regarding numerous tactical issues including, but not limited to, failure to properly respond to the call(s) regarding Decedent, failure to determine if any of the people present at the location were in danger, and negligent assessment and reassessment of the nonexistent threat presented by Decedent.

101.   As a direct and proximate cause of the acts alleged, Decedent suffered severe bodily injury and death.  As a result, Plaintiffs have been deprived of the love, affection, care, society, service, comfort, support, right to support, companionship, solace or moral support, as well as other benefits and assistance of Decedent.  Plaintiffs have or will also likely incur burial and funeral expenses.  Plaintiffs were damaged as a proximate result of the alleged acts and omissions in an amount and manner to be shown according to proof at trial.

102.   The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries and damages.

103.   The COUNTY is vicariously liable for the wrongful acts of Defendants, pursuant to California *Government Code* § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

104.   As an actual and proximate result of the negligence of Defendants and the resulting death of Decedent, Plaintiffs have sustained pecuniary loss resulting from the loss of companionship, comfort, support, society, care, sustenance and services of

26
FIRST AMENDED COMPLAINT

Decedent, and will continue to be so deprived for the remainder of their natural lives, in an amount according to proof at trial.

105.   As a further actual and proximate result of the negligence of Defendants, Plaintiffs have or will also likely incur burial and funeral expenses, in an amount according to proof at trial.

106.   The conduct of DOES 1-8, inclusive, was malicious, wanton, and oppressive, and carried out with a conscious disregard for the rights and safety of Decedent, entitling Plaintiffs to an award of punitive damages against DOES 1-8, inclusive.

107.   Pursuant to California *Code of Civil Procedure* §§ 377.30, 377.60 and 377.61, Plaintiffs have brought this action, and claims both survival damages, namely any economic losses of Decedent, and wrongful death damages from Defendants, inclusive, for the wrongful death of Decedent, and the resulting injuries.

## EIGHTH CAUSE OF ACTION

**Battery – Wrongful Death and Survival**

**(California *Code of Civil Procedure* §§ 377.60 and 377.61)**

**(*By Plaintiffs against All Defendants*)**

108.   Plaintiffs incorporate by reference the allegations as set forth above.

109.   DOES 1-8, inclusive, were acting within the course and scope of his employment as deputies for SBSD and was acting under color of state law.

110.   In committing the acts alleged, DOES 1-8, inclusive, violently, wrongfully, and intentionally battered Decedent with the intent to inflict serious bodily injury.

111.   Both prior to and during the time in which Decedent was tased, physically assaulted, and had his head slammed into the pavement, Decedent did not consent to the use of force used upon him.   In committing the acts described, DOES 1-8, inclusive,

27

FIRST AMENDED COMPLAINT

subjected Decedent to unreasonable harm to his person, in violation of California *Civil Code* § 43.

112.    As a direct and proximate cause of the acts alleged, Decedent suffered severe bodily injury and death.  As a result of the stated acts and omissions, Plaintiffs have been deprived of the life-long love, companionship, affection, guidance, comfort, support, society, care, and past and future support of Decedent, and will continue to be so deprived for the remainder of their natural lives.  The stated acts and omissions also caused Decedent's pain and suffering, loss of enjoyment of life, and death.

113.    Plaintiffs have or will also likely incur burial and funeral expenses, in an amount according to proof at trial.  Plaintiffs were damaged as a proximate result of the alleged acts and omissions in an amount and manner to be shown according to proof at trial.

114.    Defendant COUNTY is vicariously liable for the wrongful acts of DOES 1-8, inclusive, pursuant to California *Government Code* § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

115.    The alleged acts of the individual defendants, *i.e.*, DOES 1-8, inclusive, were willful, wanton, malicious, and oppressive, and justify the award of exemplary damages against them.

116.    All Plaintiffs bring this claim both individually, and plaintiff Nada also brings this claim as the Successor-in-Interest to Decedent.  They seek both survival damages, including any economic losses of Decedent, and wrongful death damages under this claim.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants and DOES 1-10, inclusive, and each of them, as follows:

---

Formatted: Font: Times New Roman, Not Bold
Formatted: Font: Times New Roman, Not Bold
Deleted: care, society, service
Formatted: Font: Times New Roman, Not Bold
Formatted: Font: Times New Roman, Not Bold
Formatted: Font: Times New Roman, Not Bold
Deleted: right to
Deleted: , companionship, solace or moral support, as well as other benefits and assistance
Deleted: .
Formatted: Font: Times New Roman, Not Bold
Formatted: Font: Times New Roman, Not Bold
Deleted: The City and the County are
Deleted: 50
Deleted: 50
Deleted: 50
Formatted: Font: 13 pt
Formatted: Font: 13 pt
Formatted: Font: 13 pt
Formatted: Font: 13 pt



a. For compensatory damages, including actual damages, according to proof;

**Deleted:** for an amount that has yet

**Deleted:** be determined but is believed to be no less than $10 million

b. For general and special damages, according to proof;

c. For exemplary damages against DOES 1-8, inclusive, in their individual capacities according to proof;

**Deleted:** 50

d. For costs, including reasonable attorneys' fees, to the extent permitted by law;

e. For an award of interest, including prejudgment interest, according to proof; and,

f. For such other and further relief as the Court deems just and proper.

DATED: August 18, 2025                    **VAKILI & LEUS, LLP**

**Deleted:** ¶ ... [2]

By:  /s/ *Sa'id Vakili*
Sa'id Vakili, Esq.
*Counsel for Plaintiffs, Nada Osama Nafaa, Fathieh Jawdat Naji, and J.H.*

**Deleted:** ¶ ... [3]

**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt
**Formatted:** Font: 13 pt

29

FIRST AMENDED COMPLAINT

1

**DEMAND FOR JURY TRIAL**

2
3       Pursuant to FRCP 38 and Local Rule 38-1, Plaintiffs hereby demand a trial by jury
of their claims to the extent authorized by law.

4
5   DATED: August 18, 2025                    **VAKILI & LEUS, LLP**

6
7                                   By:  /s/ *Sa'id Vakili*
8                                        Sa'id Vakili, Esq.
9                                        *Counsel for Plaintiffs, Nada Osama Nafaa,*
                                         *Fathieh Jawdat Naji, and J.H.*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FIRST AMENDED COMPLAINT

Deleted: 201

Deleted: April 10

Formatted: Font: 13 pt
Formatted: Font: 13 pt
Formatted: Font: 13 pt
Formatted: Font: 13 pt

| Page 25: [1] Deleted | Author |
|---|---|

| Page 29: [2] Deleted | Author |
|---|---|

| Page 29: [3] Deleted | Author |
|---|---|