Sa'id Vakili, Esq. (SBN: 176322)
vakili@vakili.com
Robert S. Brown, Esq. (SBN: 187845)
rstanfordbrown@gmail.com
Stephen P. Hoffman, Esq. (SBN: 287075)
hoffman@vakili.com
**VAKILI & LEUS, LLP**
3701 Wilshire Boulevard, Suite 1135
Los Angeles, California 90010-2822
**213/380-6010** | Fax: 213/380-6051

*Counsel for Plaintiffs Nada Osama Nafaa, Fathieh Jawdat Naji, and J.H.*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **NADA OSAMA NAFAA, individually and as Successor-in-Interest to MOHD F. HIJAZ, Deceased; FATHIEH JAWDAT NAJI, an individual; and J.H., a minor child of NADA OSAMA NAFAA and MOHD F. HIJAZ,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**COUNTY OF SAN BERNARDINO, a California county; and DOES 1-10, Inclusive,**<br><br>**Defendants.** | CASE NO.: **5:25-cv-00889-KK (DTBx)**<br><br>**PLAINTIFFS NADA OSAMA NAFAA, FATHIEH JAWDAT NAJI, AND J.H.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COUNTY OF SAN BERNARDINO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing Date: October 16, 2025<br>Time: 9:30 a.m.<br>Courtroom: 3<br><br>**Relevant Dates**<br>Complaint Filed: April 10, 2025<br>FAC Filed: August 28, 2025 |

PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF SAN BERNARDINO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..............................1

II. LEGAL STANDARDS ....................................................................................1

    A. *Rule 12(b) Motions*................................................................................ *1*

    B. *Section 1983 Liability and Ratification*................................................ *2*

III. PLAINTIFFS' FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES RATIFICATION.................................................................................3

    A. *Since the FAC Sufficiently Alleges Ratification by the Final Decisionmakers, They Need Not Name the Specific Policymaker.* ............... *3*

    B. *Even If Plaintiffs Were Required to Name a Policymaker, the Sheriff Is the Final Policymaker for Use-of-Force Policies, Complaints, Discipline, and Post-Incident Determinations for the County.* ...................... *4*

    C. *Published Department Policies Explicitly Require That SBSD Leadership Review All Lethal Force Encounters, Identify Any "Policy Concerns," Convene a Review by the Board of Deputy Chiefs, and Formally Present at the Review.* ............................................................... *7*

    D. *The FAC Alleges More Than Just a Mere Failure to Discipline.* ................. *9*

    E. *Leave to Amend Should Be Granted.* ...................................................... *10*

IV. CONCLUSION ................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*A.E. ex rel. Hernandez v. Cnty. of Tulare*
  666 F.3d 631 (2012) ............................................................................................2

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................... 1, 9, 10

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) .......................................................................................... 1, 9

*Brewster v. Shasta Cnty.*
  275 F.3d 803 (2001) ............................................................................................4

*Christie v. Iopa*
  176 F.3d 1231 (1999) ................................................................................. 2, 9 10

*City of St. Louis v. Praprotnik*
  485 U.S. 112 (1988) ............................................................................................2

*Dorger v. City of Napa*
  2012 U.S. Dist. LEXIS 124551 ..........................................................................8

*Faulkner v. ADT Servs., Inc.*
  706 F.3d 1017 (2015) .........................................................................................1

*Fuller v. City of Oakland*
  47 F.3d 1522 (9th Cir. 1995) .............................................................................2

*Gillette v. Delmore*
  979 F.2d 1342 (1992) .........................................................................................2

*Hernandez v. City of San Jose*
  241 F. Supp. 3d 959 (2017) ........................................................................... 4, 9

*Jackson v. Barnes*
  749 F.3d 755 (2014) ............................................................................................4

*Larez v. City of Los Angeles*
    946 F.2d 630 (1991) ................................................................................ 2

*Pembaur v. City of Cincinnati*
    475 U.S. 469 (1986) ................................................................................. 2

*Sheehan v. City & Cnty. of San Francisco*
    743 F.3d 1211 (2015) ............................................................................... 2

*Starr v. Baca*
    652 F.3d 1202 (2011) ............................................................................... 2

*Streit v. Cnty. of Los Angeles*
    236 F.3d 552 (2001) ................................................................................. 4

*Tangle Inc. v. Aritzia, Inc.*
    698 F.Supp.3d 1180 .................................................................................. 1

Bell Atlantic Corp. v. Twombly
    (2007) 550 U.S. at 570 ............................................................................. 9

**<u>Statutes</u>**

Federal Rules of Civil Procedure
    Rule 12(b)(6) ........................................................................................... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case centers around the senseless and completely unjustified death of 32-year-old Mohd F. Hijaz ("Hijaz" or "Decedent") in March 2024 at the hands of deputies employed by the San Bernardino County Sheriff's Department ("SBSD"), the law enforcement arm of defendant County of San Bernardino ("County"). In their motion to dismiss (herein, "Motion"), Defendants ask this Court to perform a fact-intensive inquiry and determine whether a final policymaker ratified the deputies' unconstitutional conduct for purposes of Section 1983 of Title 42 of the United States Code (generally, "Section 1983"). However, federal law is clear that a Rule 12(b)(6) motion[1] is wholly inappropriate to resolve such a fact- and context-specific issue.

Plaintiffs' First Amended Complaint ("FAC") plausibly and sufficiently alleges that the SBSD—through its final decision-makers—knew of and affirmatively approved the unjustified lethal force used by the deputies and the rationale offered for it. The FAC's allegations are more than adequate to satisfy the essential elements of a ratification claim under Ninth Circuit law, thereby establishing municipal liability under Section 1983. That is all that is required of Plaintiffs at this stage. Accordingly, this Court should deny Defendants' Motion. Alternatively, leave to amend should be granted to allow Plaintiffs to remedy any potential pleading issues.

## II. LEGAL STANDARDS

### A. Rule 12(b) Motions

To survive a Rule 12(b) motion to dismiss, a complaint only need allege "enough facts to state a claim to relief that is plausible on its face." (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).) "A claim has facial plausibility when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[1] Unless otherwise indicated, the terms "Rule" and "Rules" shall mean and refer to the relevant rule(s) of the Federal Rules of Civil Procedure.

for the misconduct alleged.'" (*Faulkner v. ADT Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).)

In deciding the motion, the court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. (*Tangle Inc. v. Aritzia, Inc.*, 698 F. Supp. 3d 1180, 1185 (N.D. Cal. 2023).) In the Ninth Circuit, only two requirements need to be satisfied for allegations in a complaint to be presumed true: (1) they "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively"; and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." (*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *accord A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr* and holding that "[t]his standard applies to *Monell* claims").)

### B. Section 1983 Municipality Liability and Ratification

A municipality is liable under Section 1983 when "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." (*Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion).) Ratification requires a "conscious, affirmative choice" by the final policymaker, i.e., a deliberate selection among alternatives. (*Gillette*, 979 F.2d at 1347; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (policymaker makes a deliberate choice among alternatives) (citation omitted).) It further requires that the policymaker knew of the alleged constitutional violation and specifically approved both the subordinate's act and its rationale. (*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).)

While "mere acquiescence" or a bare failure to discipline is insufficient, a policymaker's endorsement of a deficient investigation that whitewashes obvious misconduct can. (*See Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231

(9th Cir. 2014), *rev'd in part on other grounds*, 575 U.S. 600 (2015); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991); *Fuller v. City of Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995).) Whether ratification occurred is ordinarily a question for the jury. (*Christie*, 176 F.3d at 1238-39; *see also Larez*, 946 F.2d at 646 (expert trial testimony of deficiencies in the LAPD's investigative process was properly considered by jury as evidence supporting ratification by the Chief of the LAPD).)

## III. PLAINTIFFS' FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES RATIFICATION.

### A. *Since the FAC Sufficiently Alleges Ratification by the Final Decisionmakers, They Need Not Name the Specific Policymaker.*

Defendants' insistence that Plaintiffs identify, by name, each official who approved the use of force at issue here misstates Plaintiffs' burden. Plaintiffs are not required at the pleading stage to identify the exact name (or even title) of every final policymaker so long as they allege facts that plausibly show that a final policymaker knowingly approved the act and its basis. Plaintiffs have satisfied that standard by alleging sufficient facts supporting a reasonable inference that final policymakers in the SBSD determined the deputies' excessive use-of-force was justified and "within policy," thereby ratifying those deputies' unconstitutional actions. These allegations suggest a deliberate choice by the County's policymakers to endorse the conduct.

Unlike a passive failure to act, ratification claims involve an affirmative decision by a policymaker to adopt the subordinate's unconstitutional conduct as his own conduct or, alternatively, as an official policy, practice, or custom. By basing the alleged ratification on official determinations that excessive use-of-force was "within policy" in circumstances similar to those at issue here, Plaintiffs have sufficiently alleged specific acts showing the SBSD's—and, thus, the County's—knowing approval. Plaintiffs' FAC does not allege that the SBSD's failure to discipline its deputies *alone* constitutes evidence of ratification; however, the lack of discipline or other negative consequences

underscores the SBSD's approval of the use of excessive force, in that it reflects the SBSD's assessment that the deputies' conduct complied with both policy and constitutional requirements.

Here, the FAC identifies the policymaking officials with the County, generally, as well as with the SBSD, in particular, as fictitious defendants DOES 9-10, stating: "Defendants DOES 9-10, inclusive, are supervisory, managerial, policymaking, or final policymaking officials employed by COUNTY and/or SBSD.  DOES 9-10, inclusive, were acting under color of law, within the course and scope of their duties, and with the authority and ratification of COUNTY." (FAC, ¶ 12.)  This is enough to identify the County's and/or SBSD's final policymakers at the pleading stage.  (*See, e.g.*, *Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 979 (N.D. Cal. 2017) (allegation that police chief "was a 'competent authority' in the area of police matters" was sufficient for pleading chief's status as policymaker "even without citations to specific portions of the City Charter or other provisions of state law") (citing cases).)

### B. Even If Plaintiffs Were Required to Name a Policymaker, the Sheriff Is the Final Policymaker for Use-of-Force Policies, Complaints, Discipline, and Post-Incident Determinations for the County.

In the Ninth Circuit, sheriffs act as final policymakers for core law-enforcement functions at the county level. (*See Brewster v. Shasta Cnty.*, 275 F.3d 803, 807-09 (9th Cir. 2001) (holding that, for Section 1983 purposes, a sheriff acts for the county when investigating in-county crimes); *accord Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014) (citing several cases, including *Brewster*); *see also Streit v. Cnty. of Los Angeles*, 236 F.3d 552, 564 & n.14 (9th Cir. 2001) (citing "the many cases in which we have assumed California sheriffs to be county policymakers for section 1983 purposes").)  The FAC's allegations relating to the SBSD's leadership and officials,[2] its official as well as

---

[2] *See, e.g.*, FAC, ¶¶ 8-9, 11, and 12.

unofficial/*de facto* policies, practices, and customs,[3] its ratification and approval of the unjustified use of lethal force against Decedent and others in circumstances similar to those here,[4] and its post-LFE determinations[5] sufficiently allege policymaker involvement for pleading purposes.

This is further buttressed by the SBSD's own published and publicly-available department manuals,[6] which provide, among other things, that:

- Command staff make recommendations to the Sheriff regarding the discipline of employees alleged of misconduct, and the Sheriff makes the ultimate decision whether to approve discipline. (2019 Manual, at 733-34; 2024 Manual, at 809-10; 2025 Manual, at 824-25.)

- The commander of the SBSD's Professional Standards Division ("PSD"), which is comprised of the Internal Affairs Unit and the Civil Liabilities Unit, "reports directly to the Undersheriff." (*See, e.g.*, 2024 Manual, at 42-43; 2025 Manual, at 42-43.)

---

[3] *See, e.g.*, FAC, ¶¶ 43-44, 47, 49, 54(a)-(p), 65, and 66.

[4] *See* FAC, ¶¶ 52-53, 62-64.

[5] *See* FAC, ¶¶ 49(c), (d), and (h)-(l).

[6] *See, e.g.*, SBSD Department Manual (rev. Dec. 16, 2019) (herein, "2019 Manual"), *available at* https://www.sbcounty.gov/uploads/sheriff/sb978/Department/Department%20Manual%20Master%2012-16-19.pdf (last accessed Sept. 24, 2025); SBSD Department Manual (rev. Jul. 30, 2024) (herein, "2024 Manual"), *available at* https://wp.sbcounty.gov/sheriff/wp-content/uploads/sites/17/Department-Manual-Master-07-30-24.pdf (last accessed Sept. 24, 2025); SBSD Department Manual (rev. Aug. 6, 2025) (herein, "2025 Manual"), *available at* https://wp.sbcounty.gov/sheriff/wp-content/uploads/sites/17/Department-Manual-Master-8-6-25-1.pdf (last accessed Sept. 24, 2025). To be clear, any citations to fewer than all three versions of the manuals has been done simply for ease of readability and is not meant to suggest that the omitted versions do not contain the same or similar language.

- The Sheriff "directly supervises, on a routine basis, the activities of … [t]he Undersheriff[.]" (2024 Manual, at 30; 2025 Manual, at 30.)

- The Liability Unit (a sub-unit of the Civil Liabilities Unit) "*reviews all use of force … reports to ensure compliance with policies, training, and current law*" as well as "[r]espond[s] to the scene of select use of force, traffic collisions, Lethal Force Encounters, and in-custody incidents, etc. in which liability and/or litigation is reasonably anticipated." (2024 Manual, at 42; 2025 Manual, at 42.)

- "The primary responsibility of the Internal Affairs Unit is the investigation of allegations of misconduct and violations of policy by Department members. It is this unit's responsibility to *ensure that each investigation is complete*; and that *both the collection of all available evidence and the exploration of every potential source of information have been comprehensive*." (2024 Manual, at 43; 2025 Manual, at 43.)

- The SBSD's Department Policy Manual Committee, which manages revisions and archives of the manuals, is chaired by a Sheriff's Captain and includes the Sheriff's Legal Counsel. Further, only "[t]he Sheriff may issue amendments" to the manual, and "[n]o substantive revisions, additions, or deletions to the Department Manual shall be accomplished *without the approval of the Sheriff* or his designee." (2024 Manual, at 17-19; 2025 Manual, at 17-19.)

In other words, the County's Sheriff is the *final authority* on matters relating to employee complaints and discipline for misconduct and has complete discretion over all of SBSD's policies. Moreover, the Sheriff's direct reports include commanders, units, boards, and other subordinates specifically responsible for: (1) reviewing use of force reports; (2) responding to use of force and lethal force encounters which could reasonably result in litigation or liability; (3) conducting "comprehensive" investigations of allegations of

employee misconduct; and (4) making recommendations as to whether disciplinary action should be taken against an employee accused of misconduct.

### C. Published Department Policies Explicitly Require That SBSD Leadership Review All Lethal Force Encounters, Identify Any "Policy Concerns," Convene a Review by the Board of Deputy Chiefs, and Formally Present at the Review.

The SBSD further performs extensive, leadership-level review and investigation of all lethal-force encounters (LFE) which mandate *express* determinations of whether: (1) the force used was "within policy"; (2) "an administrative investigation is warranted"; and (3) any "training issues" exist and how those issues should be addressed. These determinations are based on presentations from the SBSD's internal investigation, bodycam footage, audio/video recordings of interviews with the employee(s) involved, and any other evidence and delivered during proceedings specifically convened for that purpose. This further establishes ratification by the County.

According to SBSD's official department manuals both published before and after Decedent was killed, when a deputy is involved in an LFE, the deputy's Station/Division Commander (along with the Bureau Deputy Chief) must respond to the scene, review the entire LFE criminal report prepared by the SBSD's Homicide Detail,[7] and specifically identify "any Department policy concerns in regard to the LFE." (2024 Manual, at 772-73; 2025 Manual, at 788-89.) The Bureau Deputy Chief then requests that the Board of Deputy Chiefs convene an LFE Review Board to review the incident. (2024 Manual, at 772-73; 2025 Manual, at 788-89.) Homicide Detail must provide all those involved in

---

[7] "The Homicide Detail is responsible for conducting a thorough, complete and detailed criminal investigation into all Lethal Force Encounter (LFE) incidents. These LFE investigations shall be comprehensive and include all aspects of a criminal investigation, including, but not limited to processing the crime scene, recovering all relevant evidence, and conducting interviews with all involved members, witness members, supervisors, civilian witnesses and suspects." (2024 Manual, at 774; 2025 Manual, at 789.)

the LFE Review Board—including the Training Division, Civil Liabilities Unit, County Counsel, and District Attorney—with all bodycam footage, audio or video recordings of post-event interviews, and give a formal presentation on its investigation and findings. (2024 Manual, at 775-76.)  The Station/Division Commander then gives an oral presentation and discusses their review of the LFE incident, where "[t]hey will also express their assessment on *whether the application of force during the LFE is within policy*." (2024 Manual, at 783 (emphasis added).)  At that point, and "*[a]fter considering all the facts and information presented*, the LFE Review Board will then *decide if an administrative investigation is warranted*.  The Board will also *identify any training issues* and how the training should be addressed by the Training Division." (*Id.* (emphasis added).)  As a result, whether the County's final policymakers deemed the deputies' misconduct here to be "within policy" is not simply conjecture; it is a verifiable—and potentially discoverable—fact.  The same is true as to whether deputies were ordered to undergo training in lieu of further investigation or discipline.

In addition to the actual, detailed LFE review process, SBSD's manuals further state that, if employee misconduct or violations of department policy are found at any time, the Sheriff must be notified immediately:

> If at any time during the LFE investigation, review or decision-making process, employee misconduct and/or policy violations are discovered, the affected Bureau Deputy Chief, Special Operations Bureau Deputy Chief and *the Office of the Sheriff shall be notified immediately*.

(2024 Manual, at 783 (emphasis added); *accord* 2025 Manual, at 798.)  Thus, the Office of the Sheriff—which includes only the Sheriff, the Undersheriff, and two Assistant Sheriffs—would be made acutely aware of any deputy misconduct or SBSD policy violations in connection with an LFE. (*See* 2024 Manual, at 30-31 ("The Office of the Sheriff" consists of only those "four positions").)

This is not a case of "mere acquiescence" or an unexplained failure to discipline.  These express policies guarantee that final policymakers and their advisors receive the

8

PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF SAN BERNARDINO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

facts ***and the rationale*** for the use of force ***before*** determining whether the conduct was "within policy" or substituting training for discipline. A subsequent leadership decision deeming the force within policy is therefore a conscious, affirmative choice approving the act and its basis—exactly what ratification requires. (*See also Dorger v. City of Napa*, 2012 U.S. Dist. LEXIS 124551, at *15 (N.D. Cal. Aug. 31) ("[W]hile failure to reprimand, standing on its own, may not be sufficient to establish ratification, additional evidence of agreement or acquiescence to the conduct will support a finding of ratification.") (citing cases); *see also Christie*, 176 F.3d at 1240 (failure to discipline along with post-incident conduct suggesting that policymaker agreed was sufficient to show ratification).) Accordingly, the County's argument fails.

To the extent the Court prefers greater specificity, Plaintiffs can easily remedy any perceived gap in their FAC by revising it to expressly allege that the County's Sheriff was and is the final policymaker for SBSD's relevant policies, practices, and customs, including for use-of-force and internal review matters. (*See Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 979 (N.D. Cal. 2017) (allegation that police chief "was a 'competent authority' in the area of police matters" sufficiently pled final policymaker status) (citing cases).)

### D. The FAC Alleges More Than Just a Mere Failure to Discipline.

As detailed *supra*, while acquiescence or failure to discipline alone does not constitute ratification, the FAC's allegations go beyond mere passive conduct. The FAC pleads surrounding, concrete facts that make ratification plausible, such as: (1) prior incidents which were characterized as within policy or otherwise did not result in discipline; (2) encouragement and commendations for officers in connection with LFEs; and (3) leadership statements defending force under similar circumstances, including mental-health calls. Those are factual allegations that, taken as true and read with reasonable inferences in Plaintiffs' favor, state a plausible ratification claim. (*See Iqbal*, 556 U.S. at 678.) That is precisely the kind of context that "nudges" ratification "across

the line from conceivable to plausible." (*See id.* at 683 (*quoting Twombly*, 550 U.S. at 570).) Moreover, the internal findings, investigations, determinations, and statements that would confirm ratification lie within the County's control, reinforcing why pleading on information and belief is not only permissible but necessary here, and furthermore why allowing the parties to conduct discovery is appropriate before dismissal.

Regardless, at the pleading stage, Plaintiffs need not *prove* ratification or even conclusively establish the identity of the specific policymaker; instead, they must only plausibly allege facts *permitting* the reasonable inference of a policymaker's knowledge and approval of the act and its basis. (*See Iqbal*, 556 U.S. at 678.)

### E.   Leave to Amend Should Be Granted.

Plaintiffs believe they have alleged more than sufficient facts to overcome Defendants' Motion, particularly given that ratification is "ordinarily a question for the jury." (*Christie*, 176 F.3d at 1238-39.) Nonetheless, if the Court finds that additional specificity is necessary, leave to amend should be granted so that Plaintiffs can—consistent with Rule 11—name the Sheriff as the final policymaker as well as add further allegations in support of ratification. Amendment would not be futile.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion. Alternatively, Plaintiffs request leave to amend.

DATED: September 25, 2025                    **VAKILI & LEUS, LLP**

By: /s/ *Sa'id Vakili*
Sa'id Vakili, Esq.
Stephen P. Hoffman, Esq.
*Counsel for Plaintiffs, Nada Osama Nafaa, Fathieh Jawdat Naji, and J.H.*

# CERTIFICATE OF SERVICE

*Nada Osama Nafaa, et al. v. County of San Bernardino, et al.*
*USDC C.D. Cal. Case No.: 5:25-cv-00889-KK-DTB*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is Vakili & Leus, LLP, 3701 Wilshire Boulevard, Los Angeles, Suite 1135, Los Angeles, California 90010.

On September 25, 2025, I served the foregoing document described as **PLAINTIFFS NADA OSAMA NAFAA, FATHIEH JAWDAT NAJI, AND J.H.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT COUNTY OF SAN BERNARDINO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** on all interested parties in this action at the addresses listed below, as follows:

Shannon L. Gustafson, Esq.
sgustafson@lynberg.com
Edward J. Southcott, Esq.
esouthcott@lynberg.com
Mark Meneses, Esq.
mmeneses@lynberg.com
**LYNBERG & WATKINS**
**A Professional Corporation**
1100 W. Town & Country Road, Suite #1450
Orange, California 92868

**714/937-1010** | Fax: 714/937-1003

*Counsel for Defendant County of San Bernardino*

I hereby certify that on the 25th day of September, 2025, I will cause to be served the above-referenced document via the United States District Court's Electronic Filing Program on the designated recipient via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing ("NEF") to the filing party, the assigned judge, and any registered users in this action. The NEF will constitute service of the document. Registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.

/s/ *Jason C. Ming*
Jason C. Ming